IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN STORES PROPERTIES, INC., | : | CIVIL ACTION |
| | : | |
| | : | NO. 05-1461 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SPOTTS, STEVENS & MCCOY, INC., et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

## OPINION AND ORDER

Slomsky, J.                                                                    August 13, 2009

## I.    INTRODUCTION

The above-captioned matter is a complex construction case arising from the alleged

failure and distress of three retaining walls at Plaintiff American Stores Properties, Inc.'s

("ASPI") food distribution center in Denver, Pennsylvania (the "Distribution Center").  Plaintiff

commenced this action on March 29, 2005 and filed its Amended Complaint (Doc. No. 2) on

July 22, 2005, naming as defendants twelve parties that were involved in various aspects of the

construction of the retaining walls.  The named defendants are: (1) Spotts, Stevens & McCoy,

Inc. ("SSM"); (2) Clark/Epstein;[1] (3) The Clark Construction Group, Inc.; (4) A. Epstein & Sons,

International, Inc.; (5) Earth Engineering, Inc.; (6) Handwerk Contractors;[2] (7) MacCaferri

_____

[1]  Defendant Clark/Epstein is a joint venture formed by Defendant The Clark
Construction Group, Inc. and Defendant A. Epstein & Sons, International, Inc. for purposes of
constructing the distribution center.  (Pl. Compl., ¶ 30.)

[2]  Handwerk is a Division of Blooming Glen Contractors, Inc.  (Pl. Compl., ¶ 7.)

1

Gabions, Inc.; (8) Baseline Contracting, Inc.; (9) Haines & Kibbelhouse, Inc.; (10) High

Associates, Ltd. ("High"); (11) CBL Service Corporation (f/k/a Lenders Support Group, Inc.)

("CBL/LSG"); and (12) Timothy E. Debes.

Currently before the Court is Defendant High's Motion for Summary Judgment pursuant

to Federal Rule of Civil Procedure 56 filed on October 1, 2007 (Doc. No. 148).[3]  Plaintiff filed its

Opposition to High's Motion for Summary Judgment (Doc. No. 166) on November 16, 2007.

On November 26, 2007, High filed a Reply in support of its Motion for Summary Judgment

(Doc. No. 167).

This action was transferred to the docket of this Court on April 30, 2009.

## II.    FACTUAL BACKGROUND

Plaintiff's claims against High arise out of High's role in the construction of the

Distribution Center for ASPI.  Because of the uneven geological foundation of the land on which

the Distribution Center was built, gabion retaining walls were required to lay the proper

foundation for the building.  (Pl. Compl., ¶22.)  A gabion retaining wall is composed of gabions,

or stone-filled wire baskets, that are stacked together to create an earth retaining wall.  (Id., ¶ 28.)

In 1996, ASPI entered into an Entitlement Services Agreement with High to engage in

commercial development of the Distribution Center (the "ASPI-High Agreement").  (Id., ¶17.)

High agreed to manage the civil design and the procurement of entitlements (i.e. obtaining the

necessary permits) for the development on behalf of ASPI.  (Id.)  The ASPI-High Agreement

---

[3]  High has filed a Motion for Summary Judgment rather than a Motion to Dismiss. High's Motion for Summary Judgment is appropriate, as High has filed an answer in this matter, and Federal Rule of Civil Procedure 56(b) provides that "A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim."  Fed. R. Civ. P. 56(b).

authorized High to select and hire subcontractors to prepare engineering investigations, reports, plans and specifications for the site work that would be required at the Distribution Center.  (Id.) High contracted with Defendant CBL/LSG for the provision of geotechnical engineering services (the "High-CBL/LSG Agreement").  (Id., ¶18.)  CBL/LSG performed subsurface explorations of the Distribution Center site and made design recommendations, including those for the retaining walls that were to be built and installed at the site.  (Id., ¶19.)  On January 13, 1997, Defendant Timothy E. Debes, an employee of CBL/LSG, issued a Subsurface Exploration Report of Building No. 264 Project[4] (the "Soils Report"), which he signed and professionally sealed as conforming "with the recognized standard geotechnical engineering procedures, while employing good customary and commercial practice."  (Id., ¶21; Pl. Ex. A. at 40.)

Also pursuant to the ASPI-High Agreement, on March 17, 1997, High entered into an agreement with Defendant SSM for the provision of civil engineering services for the development of the Distribution Center (the "High-SSM Agreement").[5]  (Pl. Compl., ¶ 24.) Plaintiff eventually entered into a similar agreement with SSM (the "ASPI-SSM Agreement") on September 10, 1998.  (Id., ¶ 26.)  Pursuant to the High-SSM Agreement and the ASPI-SSM Agreement, SSM allegedly agreed to provide civil engineering plans and specifications for all site improvements at the Distribution Center, including the preparation of construction plans and specifications for site retaining walls; construction, observation, and inspection of the site retaining walls; and other construction administration services.  (Id.)

---

[4]  The Distribution Center was also called "Building No. 264" during the early stages of development.  (Pl. Compl., ¶ 29.)

[5]  Plaintiff alleges that it was an intended third-party beneficiary of the High-SSM agreement.  (Pl. Compl., ¶ ¶ 24, 25.)

Five gabion retaining walls were designed and constructed at the Distribution Center. (Pl. Compl., ¶ 41.)  The walls were identified on the construction plans as Wall Nos. 1, 2, 3, 4 and 5. (Id.)  Plaintiff alleges that Wall No. 1 shows signs of distress from excessive movement and will eventually fail in its entirety if it is not repaired or replaced.  (Id.)  Wall No. 2 also shows signs of distress and a 40-foot section has already completely failed.  (Id.)  Portions of Wall No. 4 also show signs of distress.  (Id.)  Plaintiffs contend that the failure of Wall No. 2 and the evident distress in the other walls have progressed to the point where they will only become worse unless repaired or replaced.  (Id.)  The walls were designed to have a "useful life" in excess of 25 years and the distress and signs of movement within the walls are not normal and were not expected. (Id., ¶¶  42, 43.)

Plaintiff has brought three claims against High.  Each claim alleges that High breached the ASPI-High Agreement as a result of a co-defendant's breach of a subcontract with High. Count I of the Amended Complaint alleges breach of the ASPI-High Agreement as a result of Defendant CBL/LSG's breach of the High-CBL/LSG Agreement.  Count II of the Amended Complaint also alleges breach of the ASPI-High Agreement, but this time as a result of Defendant SSM's breach of the High-SSM Agreement.  Count III of the Amended Complaint alleges breach of warranties provided in the ASPI-High Agreement, which were allegedly caused by Defendants CBL/LSG and Timothy Debes having negligently carried out their performance of the High-CBL/LSG Agreement.  High has moved for summary judgment on all claims.

## III.    SUMMARY JUDGMENT STANDARD

Granting summary judgment is an extraordinary remedy.  Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

4

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An

issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could

find for the non-moving party, and a factual dispute is material only if it might affect the outcome

of the suit under governing law.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)

(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The Court's task is not to

resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.

Liberty Lobby, 477 U.S. at 247-49.

In ruling on a motion for summary judgment, the Court must view the evidence, and

make all reasonable inference from the evidence, in the light more favorable to the nonmoving

party.  Liberty Lobby, 477 U.S. at 252.  Whenever a factual issue arises which cannot be resolved

without a credibility determination, at this stage the Court must credit the nonmoving party's

evidence over that presented by the moving party.  Liberty Lobby, 477 U.S. at 255.  Distilled to

its essence, the summary judgment standard requires the non-moving party to create a "sufficient

disagreement to require submission [of the evidence] to a jury."  Liberty Lobby, 477 U.S. at 251-

52.

## IV.    DISCUSSION

The Court presides over this case under diversity of citizenship jurisdiction.  In a diversity

case, the Court must apply the substantive law of Pennsylvania.  Erie R.R. v. Tompkins, 304 U.S.

64, 78-79 (1938);  Ford v. Exel, Inc., No. 08-cv-1735, 2008 U.S. Dist. LEXIS 103262, **3-4

(E.D. Pa. Dec. 17, 2008).

High presents two arguments in support of its Motion for Summary Judgment.  First,

High argues that Plaintiff inappropriately attempts to hold High liable in contract for the alleged negligence of its subcontractors through the tort concept of vicarious liability. (Mot. for Summary Judgment at 7–11.) Second, High argues that in paragraph 7.2 of the ASPI-High Agreement, ASPI agreed to indemnify, hold harmless, and defend High for and against the acts for which ASPI now seeks to hold High liable. (Mot. for Summary Judgment at 11–18.)

In response to High's first argument, Plaintiff counters that it is not seeking to hold High vicariously liable for the negligence of its subcontractors. (Pl. Mem. in Opp. of Mot. for Summary Judgment at 4–9.) Rather, Plaintiff asserts that it is seeking to hold High liable for High's own breach of the ASPI-High Agreement and the warranties provided in that Agreement. (Id.) According to Plaintiff, the fact that High's breaches were caused by High's subcontractors does not convert Plaintiff's breach of contract and breach of warranty claims against High into vicarious liability tort claims. In response to High's second argument, Plaintiff argues that summary judgment is inappropriate because the indemnification clause in the ASPI-High Agreement is not sufficiently specific to be enforceable by High against Plaintiff. (Id. at 13.)

    A.    <u>High May Be Held Liable for Its Alleged Breach of the ASPI-High Agreement and Warranties Therein, Even if the Alleged Breach Was Solely the Result of Its Subcontractors' Negligence</u>

In its Motion for Summary Judgment, High argues that it is entitled to summary judgment because it cannot be held vicariously liable for the negligence of its subcontractors.[6] (Mot. for

_____

    [6] High reframes this argument somewhat in its Reply brief in support of its Motion for Summary Judgment, arguing that it cannot be held liable because both CBL/LSG and SSM, the parties whose alleged breaches are said to be the cause of High's breaches of the ASPI-High Agreement, were under Plaintiff's exclusive control. (Reply of Def. to Pl. Mem. in Opp. to Mot. for Sum. Judgment at 2–6.) The legal analysis, however, does not turn on whether High cannot be held vicariously liable for the negligence of its subcontractors or on whether High's subcontractors were under Plaintiff's control. High is responsible for its own breach of the

Summary Judgment at 4–9.)  Plaintiff counters that it is not seeking to hold High vicariously liable for the negligence of CBL/LSG and SSM, but rather is seeking to hold High liable for its own breach of the ASPI-High Agreement and warranties therein.  (Pl. Mem. in Opp. of Mot. for Summary Judgment at 4–9.)

    In its Opposition to High's Motion for Summary Judgment, Plaintiff states that High was responsible for compiling and analyzing relevant data to allow Plaintiff to determine suitability of a particular site for the Distribution Center and to allow Plaintiff to successfully construct and operate the Distribution Center.  (Id. at 4.)  Plaintiff's Amended Complaint alleges that the ASPI-High Agreement was breached because High delivered inadequate, inaccurate and unsuitable data for Plaintiff's use in selecting the site for the Distribution Center.  (Id. at 6.)  It is High's own contractual duties that Plaintiff alleges High failed to adequately perform, and it is damages for these breaches that Plaintiff seeks from High.

    The Court finds Plaintiff's argument persuasive.  Plaintiff's claim against High is for breach of the ASPI-High Agreement.  (Pl. Am. Compl., ¶¶ 54, 63, 68.)  Plaintiff is not seeking to hold High vicariously liable for the negligence of CBL/LSG or SSM.  Even though High's breach of the ASPI-High Agreement is allegedly the result of CBL/LSG's breach of the High-CBL/LSG Agreement and SSM's breach of the High-SSM Agreement, this does not relieve High of its own contractual obligations under the ASPI-High Agreement.  See, e.g., McLouth Steel Corp. v. Mesta Mach. Co., 116 F. Supp. 689 (E.D. Pa. 1953) (finding general contractor liable to owner for breach of contract even though general contractor's breach was caused solely by subcontractor's negligence); Laborers Combined Funds of W. Pennsylvania v. Mattei, 518 A.2d

―――――――――――――――――

ASPI-High Agreement and the warranties therein.

1296 (Pa. Super. 1986) ("[T]he conduct of a third party will not be permitted to affect the appellants' contractual obligations."). <u>See</u> <u>also</u> <u>Restatement (Second) of Contracts</u> § 261 cmt. e ("Even if a party contracts to render a performance that depends on some act by a third party, he is not ordinarily discharged because of a failure by that party because this is also a risk that is commonly understood to be on the obligor.").[7]

      B.    <u>The Indemnification Clause in the ASPI-High Agreement Does Not Entitle High to Summary Judgment</u>

High argues that the indemnification clause in paragraph 7.2 of the ASPI-High Agreement (hereinafter the "Indemnification Clause") is a sufficient basis for this Court to grant Summary Judgment in High's favor. Because the Indemnification Clause is not specific enough to relieve High of liability for its alleged breaches of the ASPI-High Agreement, the Court will deny High's Motion for Summary Judgment.

Paragraph 7.2 of the ASPI-High Agreement provides:

> **Company's [ASPI's] Indemnity of High.** Company [ASPI] hereby indemnifies, holds harmless and agrees to defend High from and against all claims, damages, expenses (including without limitation, attorney's fees and reasonable investigative and discovery costs), liabilities and judgments, directly or indirectly arising or resulting from an action taken or required to be taken by or on behalf of Company [ASPI] or its agents, employees, servants or subcontractors pursuant to this Agreement or otherwise in connection with the Project.

(Mot. for Sum. Judgment at 12.) Because High was required by the ASPI-High Agreement to provide for and procure geotechnical investigations and civil engineering services, the services for which High subcontracted with CBL/LSG and SSM respectively, High argues that its

---

[7] High's argument that it should not be held liable for the alleged negligence of CBL/LSG or SSM is better suited to the counter-claims for contribution and indemnification that High has brought against CBL/LSG and SSM. (Answer and Affirmative Defenses with Cross-Claims of Defendant High Associates (Doc. No. 41), at 17–18.)

procurement of these services is within the scope of the Indemnification Clause.  (Id. at 15.)

Accordingly, High claims that to the extent that ASPI is seeking to hold High liable for the

negligence of CBL/LSG and SSM, ASPI in turn is liable to High under the Indemnification

Clause and therefore High is entitled to summary judgment.  Furthermore, High argues that the

Indemnification Clause requires Plaintiff not only to defend High in this action, but also to

indemnify High for costs incurred by High in defense of this action.  (Id. at 16–18.)

Plaintiff presents several arguments in opposition to High's Motion for Summary

Judgment.  The Court is persuaded that the Indemnification Clause is not specific enough to be

enforceable by High against Plaintiff.[8]  (Pl. Mem. in Opp. of Mot. for Summary Judgment at 13.)

---

[8]  Plaintiff also argues that summary judgment is inappropriate because the
Indemnification Clause is ambiguous and therefore creates a material question of fact.  (Pl. Mem.
in Opp. of Mot. for Summary Judgment at 9–12.)  However, proper construction of an
indemnification clause is a question of law to be decided by the Court.  See Jacobs Constructors,
Inc. V. NPS Energy Servs., Inc., 264 F.3d 365, 371 (3d Cir. 2001); Bowman v. Am. Homecare
Supply, LLC, No. 07-cv-3945, 2008 U.S. Dist. LEXIS 101657 at *16 (E.D. Pa. Oct. 31, 2008).
Plaintiff also argues that an indemnification clause functions differently than an exculpatory
clause, and that the use of an indemnification clause in the ASPI-High Agreement is insufficient
to relieve High of liability.  (Pl. Mem. in Opp. of Mot. for Summary Judgment at 12–13.)  An
exculpatory clause is a release from liability for one's own contractual or tortious breaches.
Valhal Corp. v. Sullivan Assoc., 44 F.3d 195, 202 (3d Cir. 1995).  While there is some authority
for the proposition that indemnification clauses and exculpatory clauses function differently, the
law is far from clear in Pennsylvania as to the treatment of these two types of clauses.  Compare
Ocean Spray Cranberries, Inc. v. Refrigerated Food Distributors, Inc., 936 A.2d 81 (Pa. Super.
2007) (concluding that apparently contradictory Pennsylvania Supreme Court decisions involving
exculpatory and indemnification clauses were reached because indemnification clauses are
treated less favorably than exculpatory clauses) with Valhal Corp., 44 F.3d at 202 (stating in
dicta that the same test is used to determine the enforceability of both indemnification clauses
and exculpatory clauses) and Dilks v. Flohr Chvrolet, Inc., 192 A.2d 682, 688 n.11 (Pa. 1963)
("[T]here is such a substantial kinship between [indemnification and exculpatory clauses] as to
render decisions dealing with indemnity clauses applicable to decisions dealing with exculpatory
clauses, and vice versa.").  Because the Court has concluded that the Indemnification Clause is
unenforceable as a matter of law for failure to contain precise language covering the instant
situation, the Court does not reach Plaintiff's claim that consideration of the distinction between
the two clauses is relevant to the analysis here.

Indemnification clauses are disfavored under Pennsylvania law and a party must meet a high burden before an indemnification clause can be construed to relieve a party for acts it has committed.  Valhal Corp. v. Sullivan Assoc., 44 F. 3d 195, 202 (3d Cir. 1995).  The burden that must be met to enforce an indemnification clause was described by the Third Circuit as follows:

> First, the clause must not contravene public policy.  Second, the contract must relate solely to the private affairs of the contracting parties and not include a matter of public interest.  Third, each party must be a free bargaining agent.  In addition, an exculpatory or indemnity clause will not be enforced unless it is clear that the beneficiary of the clause is being relieved of liability only for his/her own acts of negligence.  The clause must be construed strictly and the contract must state the intention of the parties with the greatest particularity.  Furthermore, any ambiguity must be construed against the party seeking immunity, and that party also has the burden of proving each of the prerequisites to enforcement.

Id.

The Court will address each of the factors noted by the Third Circuit in Valhal Corp. v. Sullivan Assoc., *supra*.  First, there is no argument that the Indemnification Clause contravenes public policy.  Second, the ASPI-High Agreement relates solely to the private affairs of Plaintiff and High, and does not include a matter of public interest.  Third, there is no suggestion that either Plaintiff or High did not engage in arm's length negotiations when entering into the ASPI-High Agreement.  Accordingly, the Indemnification Clause satisfies the first three requirements outlined in Valhal Corp.

Despite the first three factors being met, High has not demonstrated that the Indemnification Clause was drafted with enough specificity to relieve High of liability for its alleged breach of the ASPI-High Agreement.  The language used in the Indemnification Clause does not set forth with particularity an intention to relieve High of liability for its own breach of the ASPI-High Agreement.  High is not explicitly named as being within the scope of the

10

Indemnification Clause in the event ASPI brings a claim against High directly.  No such language appears in the Indemnification Clause, and such an intention cannot be presumed.  <u>See</u>, <u>e.g.</u> <u>Topp Copy Prods., Inc. v. Singletary</u>, 626 A.2d 98, 101 (Pa. 1993) ("[T]here can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation.") (quoting <u>Perry v. Payne</u>, 66 A. 553, 557 (Pa. 1907)).

Construing the Indemnification Clause strictly against High and resolving all ambiguity in favor of Plaintiff, the Court concludes that High has not met the substantial burden required to overcome the disfavor with which Pennsylvania courts view indemnification clauses. Accordingly, the Court holds that the Indemnification Clause is unenforceable by High against Plaintiff in this action.

## V.      CONCLUSION

For the reasons stated above, Defendant High's Motion for Summary Judgment will be denied as to Counts I, II and III of the Amended Complaint.  An appropriate Order follows.