IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN STORES PROPERTIES, INC., | : | CIVIL ACTION |
| | : | |
| | : | NO. 05-1461 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SPOTTS, STEVENS & MCCOY, INC., et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

Slomsky, J.                                                                                       August 13, 2009

## I.    INTRODUCTION

This matter is a complex construction case arising from the alleged failure and distress of

three retaining walls at Plaintiff American Stores Properties, Inc.'s ("ASPI") food distribution

center in Denver, Pennsylvania (the "Distribution Center").  Plaintiff commenced this action on

March 29, 2005 and filed its Amended Complaint (Doc. No. 2) on July 22, 2005, naming as

defendants twelve parties that were involved in various aspects of the construction of the

retaining walls.  The named defendants are: (1) Spotts, Stevens, & McCoy, Inc.; (2)

Clark/Epstein;[1] (3) The Clark Construction Group, Inc.; (4) A. Epstein & Sons, International,

Inc.; (5) Earth Engineering, Inc.; (6) Handwerk Contractors;[2] (7) MacCaferri Gabions, Inc.

---

[1]  Defendant Clark/Epstein is a joint venture formed by Defendant The Clark Construction Group and Defendant A. Epstein & Sons, International, Inc. for purposes of constructing the distribution center.  (Pl. Compl., ¶ 30.)

[2]  Handwerk is a Division of Blooming Glen Contractors, Inc.  (Pl. Compl., ¶ 7.)

("MGI"); (8) Baseline Contracting, Inc.; (9) Haines & Kibbelhouse, Inc.; (10) High Associates,

Ltd. ("High"); (11) CBL Service Corporation (f/k/a Lenders Support Group, Inc.) ("CBL/LSG");

and (12) Timothy E. Debes.

Currently before the Court is Defendant CBL/LSG's Motion to Dismiss all claims against

it pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on September 16, 2005 (Doc. No.

39). Plaintiff filed its Opposition to Defendant CBL/LSG's Motion to Dismiss (Doc. No. 73) on

October 17, 2005. On October 20, 2005, Defendant CBL/LSG filed a Reply (Doc. No. 76).

This action was transferred to the docket of this Court on April 30, 2009.

## II.    FACTUAL BACKGROUND

Plaintiff's claims against Defendant CBL/LSG stem from CBL/LSG's role in the

construction of the Distribution Center for ASPI. Due to the uneven geological foundation of the

land on which the Distribution Center was to be constructed, gabion retaining walls were

required as part of the proper foundation for the building. (Pl. Compl., ¶22.) A gabion retaining

wall is composed of gabions, or stone-filled wire baskets, which are stacked together to create an

earth retaining wall. (Id., ¶ 28.)

In 1996, ASPI entered into an Entitlement Services Agreement with Defendant High to

engage in commercial development of the Distribution Center (the "ASPI-High Agreement").

(Id., ¶17.) High agreed to manage the civil design and the procurement of entitlements (i.e.

obtaining the necessary permits) for the development on behalf of ASPI. (Id.) The ASPI-High

Agreement authorized High to select and hire subcontractors to prepare engineering

investigations, reports, plans and specifications for the site work required at the Distribution

Center. (Id.) CBL/LSG contracted with High to provide geotechnical engineering services (the

"High-CBL/LSG agreement").  (Id., ¶18.)  CBL/LSG performed subsurface explorations of the

Distribution Center site and made design recommendations, including those for the retaining

walls that were to be built and installed at the site.  (Id., ¶19.)  On January 13, 1997, Defendant

Debes, an employee of CBL/LSG, issued a Subsurface Exploration Report of Building No. 264

Project[3] (the "Soils Report"), which he signed and professionally sealed as conforming "with the

recognized standard geotechnical engineering procedures, while employing good customary and

commercial practice."  (Id., ¶21; Pl. Ex. A at 40.)

     Five gabion retaining walls were designed and constructed at the Distribution Center. (Pl.

Compl., ¶ 41.)  The walls were identified on the construction plans as Wall Nos. 1, 2, 3, 4 and 5.

(Id.)  Plaintiff alleges that Wall No. 1 shows signs of distress from excessive movement and will

eventually fail in its entirety if it is not repaired or replaced.  (Id.)  Wall No. 2 also shows signs of

distress, and a 40-foot section of that wall has already completely failed.  (Id.)  Portions of Wall

No. 4 also show signs of distress.  (Id.)  Plaintiff contends that the failure of Wall No. 2 and the

evident distress in the other walls have progressed to the point where they will only become

worse unless repaired or replaced.  (Id.)  The walls were designed to have a "useful life" in

excess of 25 years and the distress or signs of movement within the walls are not normal and

were not expected.  (Id., ¶ ¶  42, 43.)

     Plaintiff has brought three claims against CBL/LSG.  First, Plaintiff alleges breach of

contract.  While Plaintiff did not directly enter into a contract with CBL/LSG, Plaintiff alleges

that it was an intended third-party beneficiary of the contract between High and CBL/LSG

---

[3]  It appears that the Distribution Center was also called "Building No. 264" during the
early stages of development.

(Count I).  (Pl. Compl., ¶ 52.)  Second, Plaintiff alleges CBL/LSG has breached warranties made in the High-CBL/LSG Agreement and in the Soils Report (Count III).  Finally, Plaintiff alleges CBL/LSG negligently performed the geotechnical site investigation and negligently made inadequate and inaccurate geotechnical recommendations for the design of the retaining walls (Count IV).  Defendant CBL/LSG has moved to dismiss all claims against it.

## III.   MOTION TO DISMISS STANDARD

Defendant CBL/LSG has moved to dismiss all claims against it for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (reasoning that this statement of the Rule 12(b)(6) standard remains acceptable following U.S. Supreme Court's decision in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) (internal quotations omitted)).

To withstand a motion to dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level."  Phillips, 515 F.3d at 234.  When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (reaffirming rationale set forth in Twombly).  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Id.

**IV.   DISCUSSION**

This Court presides over this case under diversity of citizenship jurisdiction.  In a

diversity case, the Court must apply the substantive law of Pennsylvania.  Erie R.R. v. Tompkins,

304 U.S. 64, 78-79 (1938);  Ford v. Exel, Inc., No. 08-cv-1735, 2008 U.S. Dist. LEXIS 103262,

**3-4 (E.D. Pa. Dec. 17, 2008).

Defendant CBL/LSG argues that Counts I and III of Plaintiff's Complaint, alleging breach

of contract and breach of warranty, respectively, should be dismissed because Plaintiff has not

plead sufficient facts to sustain a claim that Plaintiff was a third-party beneficiary of the High-

CBL/LSG Agreement.  CBL/LSG also argues that Count IV of the Complaint, alleging negligent

design, should be dismissed because it is barred under the "gist of the action" and the economic

loss doctrines.

   A.   Plaintiff's Breach of Contract Claim May Proceed Because Plaintiff Has
        Sufficiently Alleged that It Is a Third-Party Beneficiary of the High-CBL/LSG
        Agreement

It is undisputed that there is no privity of contract between ASPI and CBL/LSG.  (Doc.

No. 39 at 7; Doc. No. 73 at 2.)  Plaintiff argues, however, that its contract claim should be

allowed to proceed against CBL/LSG because Plaintiff was an intended third-party beneficiary of

the High-CBL/LSG Agreement.[4]  (Doc No. 73 at 2)  Defendant CBL/LSG argues to the contrary

---

[4]  The Response to Defendant CBL's Motion to Dismiss relies on the Pennsylvania
Supreme Court's decision in Bilt-Rite Contractors, Inc. v. Architectural Studio, 886 A.2d 270
(Pa. 2005), for the proposition that its breach of contract and breach of warranty claims are not
barred even if Plaintiff were a third-party beneficiary of the High-CBL/LSG Agreement.   (Mem.
in Opp. to Def. Mot. to Dismiss at 5–7.)  Plaintiff's reliance on Bilt-Rite is misplaced.  While
Bilt-Rite creates a narrow exception to the economic loss doctrine, and may be applicable to the
Court's consideration of whether to grant Defendant CBL's Motion to Dismiss the tort claim
against it, Bilt-Rite is not applicable to the question of whether Plaintiff has sufficiently plead its
breach of contract and breach of warranty claims against Defendant CBL.  See Bilt-Rite, 866

that Plaintiff has not sufficiently shown that it was an intended third-party beneficiary of the

High-CBL/LSG Agreement.  (Doc No. 39 at 5–7.)  The Court is persuaded that Plaintiff's breach

of contract and breach of warranty claims should be allowed to proceed against CBL/LSG

because Plaintiff has sufficiently established that it is a third-party beneficiary of the High-

CBL/LSG agreement.

The Pennsylvania standard for determining whether a party is an intended third-party

beneficiary of a contract is set forth in Scarpitti v. Weborg, 609 A.2d 147 (Pa. 1992):

> [A] party becomes a third party beneficiary only where both parties to the contract
> express an intention to benefit the third party in the contract itself, *unless*, the
> circumstances are so compelling that recognition of the beneficiary's right is
> appropriate to effectuate the intention of the parties, and [either] the performance
> satisfies an obligation of the promisee to pay money to the beneficiary or the
> circumstances indicate that the promisee intends to give the beneficiary the benefit
> of the promised performance.

Id. at 150–51 (internal citations omitted).  In other words, under the Scarpitti test, there are three

ways by which a party can establish that it is a third-party beneficiary of a contract:

> (1) Both parties to the contract express an intention to benefit the third party in the
> contract itself; OR,
>
> (2a) The circumstances are so compelling that recognition of the beneficiary's
> right is appropriate to effectuate the intention of the parties AND the performance
> satisfies an obligation of the promisee to pay money to the beneficiary; OR
>
> (2b) The circumstances are so compelling that recognition of the beneficiary's
> right is appropriate to effectuate the intention of the parties AND the
> circumstances indicate that the promisee intends to give the beneficiary the benefit
> of the promised performance.

Plaintiff has not argued or alleged either that the High-CBL/LSG Agreement expressly

---

A.2d at 274 ("This Court granted further review because the question of the viability of a
negligent misrepresentation tort action in the architect/contractor/no privity scenario is one of
first impression for this Court").

states that High and CBL/LSG intended the Agreement to benefit Plaintiff (a requirement of test

(1)), or that CBL/LSG's performance of the Agreement satisfies an obligation of High to pay

money to Plaintiff (a requirement of test (2a)).  Plaintiff's third-party beneficiary claim, however,

is rooted in the test labeled above as (2b).  Plaintiff would be an intended third party beneficiary

of the High-CBL/LSG agreement if (1) the circumstances are so compelling that recognition of

Plaintiff's right is appropriate to effectuate High and CBL/LSG's intentions; and (2) the

circumstances indicate that High intended to give Plaintiff the benefit of CBL/LSG's

performance.

     Accepting as true Plaintiff's factual allegations set forth in the Complaint and construing

them in the light most favorable to Plaintiff, the Court concludes that Plaintiff has alleged

sufficient facts to satisfy both prongs of test (2b) set forth in the Scarpitti v. Weborg decision,

supra.  At this stage of the case, the inference is that the circumstances are so compelling that

recognition of Plaintiff as a third-party beneficiary of the High-CBL/LSG Agreement will

effectuate the parties' intentions.  Furthermore, Plaintiff alleges that "the geotechnical

engineering services LSG agreed to perform for High were intended by LSG and High to benefit

the owners of the Distribution Center, [ASPI]."  (Pl. Compl. ¶ 19.)  If proven, this may be

sufficient to establish: (1) recognition of Plaintiff's right is appropriate to effectuate High's and

CBL/LSG's intentions, and (2) that High intended to give Plaintiff the benefit of CBL/LSG's

promised performance.  Accordingly, Defendant CBL/LSG's Motion to Dismiss will be denied

with respect to Count I (breach of contract).

B.      Plaintiff's Breach of Warranty Claim May Proceed Because Plaintiff Has Alleged
        Sufficient Facts to Allow It to Recover as a Third Party for CBL/LSG's Alleged
        Breach of Warranties in the High-CBL/LSG Agreement, but Not for Breach of
        Warranties in the Soils Report

Plaintiff alleges that CBL/LSG has breached warranties contained in the High-CBL/LSG

Agreement and the Soils Report (attached as Exhibit A to Plaintiff's Amended Complaint).  (Pl.

Am. Comp. ¶ 66.)  Although Plaintiff is not a party to the High-CBL/LSG Agreement, Plaintiff

alleges the High-CBL/LSG Agreement was made for Plaintiff's benefit.  (Id.)  Plaintiff also

alleges the Soils Report, which was prepared by Defendant Timothy Debes pursuant to the High-

CBL/LSG Agreement, was made for Plaintiff's benefit.  Plaintiff argues that it should be allowed

to enforce the express warranties made by CBL/LSG in the High-CBL/LSG Agreement and the

Soils Report against CBL/LSG as a third-party beneficiary.

Pennsylvania law on the enforcement of an express warranty by a third party is set forth

in Goodman v. PPG Industries, Inc., 849 A.2d 1239 (Pa. Super. Ct. 2004).  In Goodman, the

Superior Court held that:

> [T]hird parties may enforce express warranties only under circumstances where an
> objective fact-finder could reasonably conclude that: (1) the party issuing the
> warranty intends to extend the specific terms of the warranty to the third party (either
> directly or through an intermediary); and (2) the third party is aware of the specific
> terms of the warranty, and the identity of the party issuing the warranty.

Id. at 1246.  See also Kagan v. Harley Davidson, Inc., No. 07-cv-0694, 2008 U.S. Dist. LEXIS

32747 (E.D. Pa. Apr. 22, 2008) (applying Goodman test); Landis v. U.S. Airways, Inc., No. 07-

cv-1216, 2008 U.S. Dist LEXIS 21300 (W.D. Pa. Mar. 18, 2008) (applying Goodman test);

Peters v. LG Electronics USA, Inc., No. 07-cv-38, 2007 U.S. Dist. LEXIS 94758 (D. N.J. Dec.

27, 2007) (applying Goodman test).

Applying the <u>Goodman</u> standard to Plaintiff's claim against CBL/LSG for breach of

warranties contained in the High-CBL/LSG Agreement, the Court concludes that Plaintiff should

be allowed to proceed on this claim.  Plaintiff's Amended Complaint alleges that "LSG . . .

breached the warranties of the [High-CBL]/LSG agreement . . . made for the benefit of American

Stores."  Although CBL/LSG argues that Plaintiff has not plead sufficient facts to prove this

claim, CBL/LSG has not presented any evidence to the contrary.[5]  In the absence of contrary

evidence, the Court must credit as true Plaintiff's factual allegation that the warranties made in

the CBL/LSG Agreement were made for Plaintiff's benefit.[6]  Crediting Plaintiff's factual

---

[5]  For example, the High-CBL/LSG Agreement has not been filed with the Court.

[6]  The absence of evidence to refute Plaintiff's claim that the warranties made in the
CBL/LSG Agreement were made for its benefit stands in stark contrast to the Soils Report,
which expressly disclaims any intent to extend the warranties to any third party. There are two
warranties contained in the Soils Report.  The first provides that:

> This report was prepared in accordance with the work scope agreed to by the client
> [High], and represents our good faith effort to investigate the subsurface conditions
> of the project site in conformance with recognized standard geotechnical engineering
> procedures, while employing good customary and commercial practice.  No other
> warranties or guarantees are implied or expressed.

(Exhibit "A' at 40.)  The second warranty is substantially similar and provides:

> This report has been prepared in accordance with generally accepted soil and
> foundation engineering practices for the use of the client [High] for design purposes.
> No other warranty, expresses of implied, is made as to the professional advice
> included in this report.  The report has not been prepared for use by parties other than
> those named or for uses other than those enumerated above.

(<u>Id.</u> at 146.)  As set forth in this Court's ruling on the Motion to Dismiss of Defendant Timothy
Debes filed this date, this language expressly disclaiming an intent to benefit any third party is
sufficient to support a finding that Plaintiff may not assert a third-party breach of warranty claim
under the Soils Report.

allegations as true and construing the Complaint in the light most favorable to Plaintiff, and in

the absence of any contrary evidence, the Court concludes that there are sufficient facts alleged to

show that CBL/LSG intended to extend the warranties allegedly made in the High-CBL/LSG

Agreement to Plaintiff.  Accordingly, CBL/LSG's Motion to Dismiss Count III of the Amended

Complaint will be denied.

      C.       Plaintiff's Negligent Design Claim Is Barred Under the "Gist of the Action" and
                Economic Loss Doctrines

Defendant next argues that Plaintiff's negligent design claim in Count IV should be

dismissed under the "gist of the action" and the economic loss doctrines.  Because Plaintiff's

claims against CBL/LSG sound in contract rather than tort, Plaintiff's claim for negligent design

is barred under the "gist of the action" doctrine.  Accordingly, Defendant's Motion to Dismiss

Count IV of the Complaint will be granted.

The "gist of the action" doctrine prevents a plaintiff from bringing an action in tort that

actually sounds in contract.  In eToll, Inc. v. Elias/Savion Advertising., the Pennsylvania

Superior Court noted the following in regard to this doctrine:

> [T]he [gist of the action] doctrine is designed to maintain the conceptual distinction
> between breach of contract claims and tort claims.  As a practical matter, the doctrine
> precludes plaintiffs from recasting ordinary breach of contract claims into tort
> claims . . .   "The important difference between contract and tort actions is that the
> latter lie from the breach of duties imposed as a matter of social policy while the
> former lie for the breach of duties imposed by mutual consensus."

811 A.2d 10, 14 (Pa. Super. Ct. 2002) (quoting Redevelop. Auth. v. Int'l Ins. Co., 685 A.2d 581,

590 (Pa. Super. Ct. 1996)).  The eToll court summarized the types of cases in which the "gist of

the action" doctrine has been applied:

> [P]ersuasive authority interpreting Pennsylvania law has restated the gist of the action

doctrine in a number of similar ways.  These courts have held that the doctrine bars tort claims: (1) "arising solely from a contract between the parties"; (2) where "the duties allegedly breached were created and grounded in the contract itself"; (3) where "the liability stems from a contract"; or (4) where the tort claim "essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract."

eToll, 811 A.2d at 19 (citations omitted).

Plaintiff's claims against CBL/LSG sound in contract rather than tort.  As discussed above, Plaintiff has sufficiently plead that it was the intended third-party beneficiary of the High-CBL/LSG Agreement.  Plaintiff may not then convert the same allegations into a negligence claim against CBL/LSG.  Duties owed to Plaintiff by CBL/LSG arose out of CBL/LSG's alleged contractual obligations to Plaintiff.  Plaintiff may not now "recast ordinary breach of contract claims into tort claims."  Id.  Consequently, Plaintiff is precluded from pursuing a tort claim also allegedly arising out of the High-CBL/LSG Agreement.[7]

## V.     CONCLUSION

For the reasons stated above, Defendant CBL/LSG's Motion to Dismiss will be granted in part and denied in part.  Plaintiff has filed a Motion for Leave to File a Second Amended Complaint and has attached a proposed copy of that Complaint.  (Doc. No. 150.)  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend should be given freely when justice so requires.  Fed. R. Civ. P. Rule 15(a).  This rule is liberally construed in favor of allowing disputes to be settled on their merits.  See United States v. Houghman, 364 U.S. 310, 316 (1960)

---

[7] CBL/LSG also argues that Plaintiff's negligence claim against it should be dismissed under the economic loss doctrine.  Applying the reasoning of the Court's rulings filed on this date resolving the Motions to Dismiss of Defendant Debes and Defendants MGI, EEI, BCI, Haines, and Handwerk, the Court concludes that the economic loss doctrine would also apply here and is another basis for granting CBL/LSG's Motion to Dismiss.

(citing <u>Conley v. Gibson</u>, 355 U.S. 41, 48 (1957)); <u>Kauffman v. Moss</u>, 420 F. 2d 1270, 1276 (3d

Cir. 1970).  As such, Plaintiff will be permitted to file an Amended Complaint in conformity

with the four Opinions issued by the Court on this date.  An appropriate Order follows.