IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN STORES PROPERTIES, INC., | : | CIVIL ACTION |
| | : | |
| | : | NO. 05-1461 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SPOTTS, STEVENS & MCCOY, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

Slomsky, J.                                                          August 13, 2009

## I.    INTRODUCTION

The above-captioned matter is a complex construction case arising from the alleged

failure to properly construct three retaining walls at Plaintiff American Stores Properties, Inc.'s

("ASPI") food distribution center in Denver, Pennsylvania (the "Distribution Center").  Plaintiff

commenced this action on March 29, 2005 and filed its Amended Complaint (Doc. No. 2) on

July 22, 2005, naming as defendants twelve parties that were involved in various aspects of the

construction of the retaining walls.  The named defendants are: (1) Spotts, Stevens & McCoy,

Inc.; (2) Clark/Epstein;[1] (3) The Clark Construction Group, Inc.; (4) A. Epstein & Sons,

International, Inc.; (5) Earth Engineering, Inc.; (6) Handwerk Contractors;[2] (7) MacCaferri

---

[1]  Defendant Clark/Epstein is a joint venture formed by Defendant The Clark
Construction Group and Defendant A. Epstein & Sons, International, Inc. for purposes of
constructing the distribution center.  (Pl. Compl., ¶ 30.)

[2]  Handwerk is a Division of Blooming Glen Contractors, Inc.  (Pl. Compl., ¶ 7.)

Gabions, Inc.; (8) Baseline Contracting, Inc.; (9) Haines & Kibbelhouse, Inc.; (10) High

Associates, Ltd. ("High"); (11) CBL Service Corporation (f/k/a Lenders Support Group, Inc.)

("CBL/LSG"); and (12) Timothy E. Debes ("Debes").

Currently before the Court is Defendant Debes's Motion to Dismiss all claims against

him pursuant to Federal Rule of Civil Procedure 12(b)(6), filed September 16, 2005 (Doc. No.

40).  Plaintiff filed its Opposition to Debes' Motion to Dismiss (Doc. No. 74) on October 17,

2005.  On October 20, 2005, Debes filed a Reply in support of his Motion to Dismiss (Doc. No.

76).

This action was transferred to the docket of this Court on April 30, 2009.

## II.    FACTUAL BACKGROUND

Plaintiff's claims against Debes stem from his role in the construction of the Distribution

Center for ASPI.  Due to the uneven geological foundation of the land on which the Distribution

Center was to be constructed, gabion retaining walls were required as part of the proper

foundation for the building.  (Pl. Compl., ¶22.)  A gabion retaining wall is composed of gabions,

or stone-filled wire baskets, which are stacked together to create an earth retaining wall.  (Id., ¶

28.)

In 1996, ASPI entered into an "Entitlement Services Agreement" with Defendant High to

engage in commercial development of the Distribution Center.  (Id., ¶17.)  High agreed to

manage the civil design and procurement of entitlements (i.e. obtaining the necessary permits)

for the development on behalf of ASPI.  (Id.)  These agreements authorized High to select and

hire subcontractors to prepare engineering investigations, reports, plans and specifications for the

site work required at the Distribution Center.  (Id.)  Defendant CBL/LSG contracted with High to

provide geotechnical engineering services (the "High-CBL/LSG Agreement").  (Id., ¶18.)

CBL/LSG performed subsurface explorations of the Distribution Center site and made design

recommendations, including those for the retaining walls that were to be built and installed at the

site.  (Id., ¶19.)  On January 13, 1997, Debes, an employee of CBL/LSG, issued a Subsurface

Exploration Report of Building No. 264 Project[3] (the "Soils Report"), which he signed and

professionally sealed as conforming "with the recognized standard geotechnical engineering

procedures, while employing good customary and commercial practice."  (Id., ¶21; Pl. Ex. A.)

        Five gabion retaining walls were designed and constructed at the Distribution Center.  (Pl.

Compl., ¶ 41.)  The walls were identified on the construction plans as Wall Nos. 1, 2, 3, 4 and 5.

(Id.)  Plaintiff alleges that Wall No. 1 shows signs of distress from excessive movement and will

eventually fail in its entirety if it is not repaired or replaced.  (Id.)  Wall No. 2 also shows signs

of distress with a 40 foot section that has completely failed.  (Id.)  Portions of Wall 4 show signs of

distress, as well.  (Id.)  Plaintiff contends that the failure of Wall No. 2 and the evident distress in

the other walls have progressed to the point where they will only become worse unless repaired

or replaced.  (Id.)  The walls were designed to have a "useful life" in excess of 25 years and the

distress or signs of movement within the walls are not normal and were not expected.  (Id., ¶ ¶

42, 43.)

        Plaintiff has brought two claims against Debes.  In Count III of the Amended Complaint,

Plaintiff alleges breach of warranty.  In Count IV of the Amended Complaint, Plaintiff alleges

negligent design.  Debes has moved to dismiss both claims.

---

        [3]  The Distribution Center was also called "Building No. 264" during the early stages of
the development.  (Pl. Compl., ¶ 29.)

III.    **MOTION TO DISMISS STANDARD**

Debes has moved to dismiss all claims against him for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (reasoning that this statement of the Rule 12(b)(6) standard remains acceptable following U.S. Supreme Court's decision in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) (internal quotations omitted)).

To withstand a motion to dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level."  Phillips, 515 F.3d at 234.  When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 129 U.S. 1937, 1950 (2009) (reaffirming rationale set forth in Twombly).  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Id.

IV.    **DISCUSSION**

The Court presides over this case under diversity of citizenship jurisdiction.  In a diversity case, the Court must apply the substantive law of Pennsylvania.  Erie R.R. v. Tompkins, 304 U.S. 64, 78-79 (1938); Ford v. Exel, Inc., No. 08-cv-1735, 2008 U.S. Dist. LEXIS 103262, **3-4 (E.D. Pa. Dec. 17, 2008).

Debes argues that Count III of Plaintiff's Amended Complaint alleging breach of warranty should be dismissed because Plaintiff has not established that it was a third-party beneficiary of the employment contract between Debes and CBL/LSG and because Plaintiff is not in privity of contract with Debes.[4]  Debes also argues that he did not make any warranties to Plaintiff, either express or implied, in his personal capacity.  Finally, Debes argues that Count IV of the Complaint alleging negligent design should be dismissed under the economic loss doctrine.  For the reasons that follow, Debes's Motion to Dismiss will be granted as to both Count III and Count IV.

A.   <u>Plaintiff's Breach of Warranty Claim Against Debes Will Be Dismissed Because Plaintiff Has Failed To Establish That It Was An Intended Beneficiary of Any Warranty Made by Debes</u>

Plaintiff alleges that Debes is in breach of warranties contained in the Soils Report (Pl. Ex. A).  (Pl. Am. Comp. ¶ 66.)  Although the Soils Report was prepared by Debes pursuant to the High-CBL/LSG agreement (Id. at ¶ 22.), Plaintiff alleges that both the Soils Report and the High-CBL/LSG agreement were made for Plaintiff's benefit.  (Id. at ¶ 66.)   Plaintiff argues that it was an intended third party beneficiary of the express warranties made by Debes in the Soils Report.[5]

---

[4]  Plaintiff concedes that it is not in privity with Debes.  (Def. Resp. to Pl. Mot. to Dismiss at 8.)  Privity of contract is required when a party is attempting to enforce an implied warranty under the common law, as Plaintiff attempts to do here.  <u>Manor Junior College v. Kaller's Inc.</u>, 507 A.2d 1245, 1249 (Pa. Super. Ct. 1986) (citing <u>Williams v. Penn Power Co.</u>, 467 A.2d 811 (Pa. 1983)) (dismissing breach of implied warranty claim in case involving the installation of a roof because plaintiff was not in privity with the defendant).  Because Plaintiff concedes that it is not in privity of contract with Debes, the Court will not address this point further.

[5]  In Plaintiff's Response to Debes's Motion to Dismiss, Plaintiff argues that under the Pennsylvania Supreme Court's decision in <u>Bilt-Rite Contractor's Inc. v. Architectural Studio</u>, 866 A.2d 270 (Pa. 2005), it need not allege that any contractual relationship existed between Plaintiff and Debes.  (Def. Resp. to Pl. Mot. to Dismiss at 3–7.)  Plaintiff's reliance on <u>Bilt-Rite</u>

Because the Court concludes that Plaintiff has failed to present sufficient facts to establish that it was a third-party beneficiary of the warranties made by Debes in the Soils Report, Debes's Motion to Dismiss Count III of the Complaint will be granted.

Pennsylvania law on the enforcement of an express warranty by a third party is set forth in Goodman v. PPG Industries, Inc., 849 A.2d 1239 (Pa. Super. Ct. 2004). In Goodman, the Superior Court held that:

> [T]hird parties may enforce express warranties only under circumstances where an objective fact-finder could reasonably conclude that: (1) the party issuing the warranty intends to extend the specific terms of the warranty to the third party (either directly or through an intermediary); and (2) the third party is aware of the specific terms of the warranty, and the identity of the party issuing the warranty.

Id. at 1246. See also Kagan v. Harley Davidson, Inc., No. 07-cv-0694, 2008 U.S. Dist. LEXIS 32747 (E.D. Pa. April 28, 2008) (applying Goodman test); Landis v. U.S. Airways, Inc., No. 07-cv-1216, 2008 U.S. Dist LEXIS 21300 (W.D. Pa. March 18, 2008) (applying Goodman test); Peters v. LG Electronics USA, Inc., No. 07-cv-38, 2007 U.S. Dist. LEXIS 94758 (D. N.J. Dec. 28, 2007) (applying Goodman test). Thus, in order to survive Debes's Motion to Dismiss, Plaintiff must allege facts that satisfy both prongs of the Goodman test.

Applying this standard to the factual allegations in the Amended Complaint, and reviewing them in the light most favorable to Plaintiff, the claim against Debes for breach of warranties contained in the Soils Report is legally insufficient. There are two warranties contained in the Soils Report. The first provides that:

> This report was prepared in accordance with the work scope agreed to by the client [High], and represents our good faith effort to investigate the subsurface conditions

---

is misplaced, as that case, which will be discussed at length below, involved a claim for the tort of negligent misrepresentation, not a breach of warranty claim similar to the one at issue here.

> of the project site in conformance with recognized standard geotechnical engineering procedures, while employing good customary and commercial practice. No other warranties or guarantees are implied or expressed.

(Exhibit "A' at 40.) The second warranty is substantially similar to the first and provides in

pertinent part that:

> This report has been prepared in accordance with generally accepted soil and foundation engineering practices for the use of the client [High] for design purposes. No other warranty, expresses of implied, is made as to the professional advice included in this report. The report has not been prepared for use by parties other than those named or for uses other than those enumerated above.

(Id. at 146.) By its terms, the Soils Report expressly disclaims that the warranties contained in it

are intended to extend to any third party. Plaintiff has not pointed to any facts to the contrary

from which this Court can conclude that the express warranties contained in the Soils Report

were intended to apply to Plaintiff. Therefore, Plaintiff has failed to meet the first prong of the

Goodman test which requires that the party issuing the warranty intends to extend it to a third

party. Consequently, Plaintiff cannot enforce the express warranties made in the Soils Report as

a third party and Debes's Motion to Dismiss Count III of the Amended Complaint will be

granted.

> B.   <u>Plaintiff's Negligent Design Claim Against Debes is Barred by the Economic Loss Doctrine.</u>

In Count IV of the Amended Complaint, Plaintiff seeks damages from Debes related to

the cost of repairing and/or replacing the allegedly defective gabion retaining walls at its

Distribution Center. The Count alleges negligent or tortious conduct by Debes. Because

Plaintiff does not allege any physical injury to any person or damage to property apart from the

retaining walls, its negligent design claim against Debes is barred by the economic loss doctrine.

The economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Adams v. Copper Beach Townhome Cmtys., L.P., 816 A.2d 301, 305 (Pa. Super. Ct. 2003). Economic loss has been defined as "damage for inadequate value, costs of repair and replacement of defective product, consequential loss of property, *without any claim of personal injury or damage to other property*." Palco Linings, Inc. v. Pavex, Inc., 755 F. Supp. 1269, 1276 (M.D. Pa. 1990) (emphasis added). Because Count IV fails to allege a claim of damage for personal injury or damage to property apart from the retaining walls, the economic loss doctrine bars Plaintiff's negligence claim against Defendant Debes.

Plaintiff puts forth three arguments in opposition to the application of the economic loss doctrine to its claim against Debes: (1) that the doctrine is inapplicable absent privity between the parties; (2) that the holding in Bilt-Rite, 866 A.2d 270, prevents the Court from applying the economic loss doctrine; and (3) that Plaintiff did suffer damages to "other property." (Doc. No. 74.) The Court will discuss each argument made by Plaintiff *seriatim*, but is not persuaded that they overcome the legal bar raised by Debes.

      1.     *The Economic Loss Doctrine Bars Plaintiff's Negligent Design Claim Despite the Absence of Privity Between the Parties.*

Plaintiff argues that the economic loss doctrine is not applicable to its claim against Debes because no privity of contract exists between ASPI and Debes. (Doc. No. 74 at 8-9.) However, controlling Federal and Pennsylvania state law hold that privity of contract is not required for application of the economic loss doctrine to Plaintiff's negligence claim. See e.g., Hartford Fire Ins. Co. v. Associated Const. & Mgmt. Corp., No. 98-45, 2000 U.S. Dist. LEXIS

4959, at **25-26 (E.D. Pa. Apr. 19, 2000);  Spivack v. Berks Ridge Corp. Inc., 586 A.2d 402, 405 (Pa. Super. Ct. 1990).

In a series of cases that resulted from the construction of Two-Liberty Place in Philadelphia, courts in the Eastern District of Pennsylvania consistently found that, even where the parties were not in privity of contract, Pennsylvania law does not recognize a cause of action based on negligent acts that result in only economic loss.  Gittens-Atman, A.M.A. v. HCB Contractors, No. 90-6908, 1992 U.S. Dist. LEXIS 13431, at **3-4 (E.D. Pa. Sept. 08, 1992) (dry-wall subcontractors negligence claim against project architect dismissed even in the absence of contractual privity); HCB Contractors v. Rouse Assoc., No. 91-5350, 1992 U.S. Dist. LEXIS 17442, at **14-15 (E.D. Pa. Oct. 26, 1992) (subcontractor owed no duty to alleged injured party asserting only economic loss, with whom it was not in privity).  Courts in the Eastern District of Pennsylvania have continued to recognize application of the economic loss doctrine to cases where no contractual relationship existed between the parties.  Waynesborough Country Club of Chester Cty. v. Diedrich Bolton Architects, Inc., No. 07-155, 2008 U.S. Dist. LEXIS 55698, at **20-21 (E.D. Pa. Mar. 10, 2008) (stating that Pennsylvania law does not recognize a cause of action between parties not in privity of contract for negligent acts that result in only economic injuries); Hartford Fire Ins. Co., 2000 U.S. Dist. LEXIS 4959, at **25-26 (plaintiff's negligence claim against defendant for its lack of proper engineering evaluation and judgment relating to roof construction dismissed despite lack of contractual relationship); Allied Fire & Safety Equip. Co. Inc. v. Dick Enterprises, Inc., 972 F. Supp. 922, 938 (E.D. Pa. 1997) (recognizing that the economic loss doctrine has been applied when the parties did not have a contractual relationship).

The Pennsylvania Superior Court has consistently applied the economic loss doctrine to prevent recovery for economic loss where the parties were not in privity of contract.  Aikens v. Baltimore & Ohio RR. Co., 501 A.2d 277, 278 (Pa. Super. Ct. 1985); see also Spivack, 586 A.2d at 405 (negligent construction and design claim against builder/general contractor barred by economic loss doctrine despite absence of contractual relationship); Margolis v. Jackson, 543 A.2d 1238, 1240 (Pa. Super. Ct. 1988) ("Purely economical loss, when not accompanied with or occasioned by injury, is considered beyond the scope of recovery even if a direct result of the negligent act."); Gen. Pub. Util. v. Glass Kitchens of Lancaster, 542 A.2d 567, 570 (Pa. Super. Ct. 1988) (tourist industry could not recover against owners of nuclear power plant for economic loss arising from negligent nuclear accident that caused diminution in tourist industry).  While the Pennsylvania Superior Court has applied the economic loss doctrine in a variety of contexts, the rationale behind the application of this doctrine is appropriate in the instant matter because "to allow a [negligence cause of action for] purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action. Such an outstanding burden is clearly inappropriate and a danger to our economic system." Aikens, 501 A.2d at 279.

Plaintiff's argument that the economic loss doctrine is not applicable absent privity of contract is based entirely on a single sentence found in Duquesne Light Co. v. Westinghouse Elec. Corp., stating that: "the economic loss doctrine ... only covers situations in which 'a party in privity of contract with another suffers an injury to a product itself resulting in purely economic loss.'"  66 F.3d 604, 620 (3d Cir. 1995) (quoting Grode v. Mut. Fire, Marine & Inland Ins. Co., 623 A.2d 933, 934 (Pa. Commw. Ct. 1993)).  However, the sentence that Plaintiff relies

upon is dicta.  In the <u>Duquesne Light Co.</u> case, a contract existed between the parties and the

court did not decide whether privity of contract was required in order to apply the economic loss

doctrine.  The court did not engage in any analysis based upon lack of privity between the parties.

Therefore, <u>Duquesne Light Co.</u> is inapposite to the present case and does not provide support for

Plaintiff's claim that the economic loss doctrine should not be applied here.

2.        *Plaintiff's Reliance on the <u>Bilt-Rite</u> case is Misplaced Because the Holding in <u>Bilt-Rite</u> is Restricted to a Negligent-Misrepresentation Claim.*

Plaintiff also argues that the holding of <u>Bilt-Rite</u>, 866 A.2d 270, prevents the Court from

applying the economic loss doctrine when "dealing with professionals whose information is to be

relied upon by others in the industry, like Debes."  (Doc. No. 74 at 9-10.)  However, <u>Bilt-Rite</u> is

inapposite here because the Supreme Court of Pennsylvania addressed the economic loss

doctrine only in the narrow context of a negligent misrepresentation claim.

In <u>Bilt-Rite</u>, the East Penn School District hired The Architectural Studio ("TAS") to

provide services for the design and construction of a new school.  866 A.2d at 272.  TAS

provided its plans, drawings and specifications with full knowledge that those plans would then

be submitted to various contractors who subsequently bid on the project.  <u>Id.</u> at 288.  Bilt-Rite

Contractors ("Bilt-Rite") was awarded the general construction contract and entered into a

contract with the school district.  <u>Id.</u> at 272.  The contract specifically referred to and

incorporated by reference all of the plans prepared by TAS.  <u>Id.</u>  Shortly after construction

commenced, Bilt-Rite discovered that some of the representations contained in TAS'

specifications were inaccurate, resulting in significantly increased construction costs.  <u>Id.</u>  Bilt-

Rite sued TAS on a theory of negligent misrepresentation under Section 552 of the Restatement

(Second) of Torts (1977), and claimed that it had relied on the plans prepared by TAS in formulating its winning bid on the project.  Id. at 272-273.  The Supreme Court formally adopted Section 552 as the law in Pennsylvania, for which privity is not a requirement, and held that the economic loss doctrine does not apply to claims for negligent misrepresentation against design professionals whose information may be relied upon by others.  Id. at 285.

Bilt-Rite does not preclude the application of the economic loss doctrine to all negligent or tortious conduct alleged against parties involved in a construction project.  Its holding only applies to a claim for negligent misrepresentation under Section 522 of the Restatement (Second) of Torts (1977).  While Bilt-Rite does carve out an exception to the economic loss doctrine to allow a commercial plaintiff to seek recourse from an "expert supplier of information" with whom the plaintiff had no contractual relationship, most courts have specifically restricted the holding in Bilt-Rite to negligent misrepresentation claims under Section 552.  See e.g., Sovereign Bank v. BJ's Wholesale Club, 533 F.3d 162, 193 (3d Cir. 2008); Nufeeds, Inc. v. Westmin Corp., No. 04-1071, 2006 U.S. Dist. LEXIS 21030, at **26-31 (M.D. Pa. Apr. 17, 2006); Pa. State Employees Credit Union v. Fifth Third Bank, 398 F. Supp. 2d 317, 327 (M.D. Pa. 2005); Samuel Grossi & Sons, Inc. v. U.S. Fidelity & Guar. Co., No. 3590, 2005 Phila. Ct. Com. Pl. LEXIS 283, at *18 n.2 (Pa. Ct. Com. Pl. June 27, 2005).  Some courts have read Bilt-Rite to have a more narrow application: to only negligent misrepresentation claims involving architects and similar design professionals.  See e.g., Rock v. Voshell, No. 05-1468, 2005 U.S. Dist. LEXIS 36942, at **4-7 (E.D. Pa. Dec. 29, 2005); Carson/DePaul/Ramos v. Driscoll/Hunt, No. 02166, 2006 Phila. Ct. Com. Pl. LEXIS 278, at *32 n.31 (Pa. Ct. Com. Pl. June 29, 2006).

While the holding in Bilt-Rite is controlling on claims for negligent misrepresentation

that fall under Section 522 of the Restatement (Second) of Torts, Plaintiff has not brought a

negligent misrepresentation claim against Debes.  Therefore, the Court finds that Bilt-Rite does

not prevent application of the economic loss doctrine to Plaintiff's negligent design claim in this

case.

            3.     *Plaintiff Did Not Suffer Damage to "Other Property."*

Plaintiff argues that the economic loss doctrine should not bar its claim against Debes,

because the damage incurred as a result of the failure of the retaining walls was not damage to

the "product itself," but was damage to "other property."  (Doc. No. 74 at 9-11.)  Despite

Plaintiff's argument, the finished gabion retaining walls were the "product" for which ASPI

bargained.  Accordingly, damages related to the cost of repair or replacement of those walls

based upon the negligence claim in the Amended Complaint are not recoverable under the

economic loss doctrine.

In Hartford Fire Ins. Co. v. Associated Const. & Mgmt. Corp., the court applied the

economic loss doctrine to a case factually similar to the instant one.  No. 98-45, 2000 U.S. Dist.

LEXIS 4959 (E.D. Pa. Apr. 19, 2000).  In Hartford Fire Ins. Co., the plaintiff insurer sued a

number of defendants following the partial collapse of its insured's manufacturing facility's roof.

Id. at *3.  The court applied the economic loss doctrine to dismiss the negligence claims against a

defendant who had supplied purlins for the reconstructed roof, as well as engineering services,

and held that the "product" that the Plaintiff had purchased was not the component purlins, but

was the actual repair and reconstruction of the roof.  Id. at **14-22.  The Hartford Fire Ins. Co.

court relied on the Third Circuit's analysis in Commercial Union Ins. Co.v. Kirby Bldg. Sys.,

Inc., where the court examined four post-East River cases (including those cited by Plaintiff in

13

the instant matter) to determine what constitutes damage to "other property." Id. at **17-22

(citing Commercial Union Ins. Co., 149 F.3d 1163 (3d Cir. 1998)).  The Hartford Fire Ins. Co.

court adopted the reasoning of the court in Commercial Union and stated: "where a plaintiff sues

a component manufacturer, rather than the manufacturer of a final assembled product, King holds

that a court must not look to the component part to define the product; rather, the relevant

'product' remains 'what the plaintiff bargained for.'" Id. at **17-22 (citing Commercial Union

Ins. Co., 149 F.3d 1163); King v. Hilton-Davis, 855 F.2d 1047, 1051-1052 (3d Cir. 1988)).  In

the instant case, under the Commercial Union/King analysis, the "product" is the finished gabion

retaining walls for which ASPI bargained.  Accordingly, Plaintiff has only alleged damage to

"the product itself," which is not recoverable under the economic loss doctrine.

Plaintiff relies on 2-J Corp. v. Tice, 126 F.3d 539, 543 (3d Cir. 1997), in supprt of its

position that the damage to the retaining walls is damage to "other property" which is

recoverable despite the economic loss doctrine.  (Doc. No. 74 at 9-11.)  In 2-J Corp. v. Tice, the

court noted that "for purposes of applying the economic loss doctrine, 'the product' is no more

and no less than whatever the manufacturer placed in the stream of commerce by selling it to the

initial user."  126 F.3d 539, 543 (3d Cir. 1997) (quoting Saratoga Fishing Co. v. J.M. Martinac &

Co., 520 U.S. 875 (1997)).  Plaintiff contends that under this description of "product," the

geotechnical information contained in the Soils Report prepared by Debes is the "product" which

was placed in the stream of commerce.  (Doc. No. 74 at 10.)  However, Plaintiff is mistaken in

relying on 2-J Corp. because the factual circumstances presented here are clearly distinguishable

from those in 2-J Corp.

In 2-J Corp., the plaintiff was permitted to recover damages for inventory and other goods

from the manufacturer of its pre-engineered warehouse.  126 F.3d at 540.  The inventory was
stored in the warehouse and was damaged when the warehouse collapsed.  <u>Id.</u>  The court
determined that the warehouse itself was the "product" and that recovery was appropriate for the
inventory and other goods stored within the warehouse, since they constituted damage to "other
property."  <u>Id.</u> at 544.  In the instant matter, if ASPI had alleged damage to goods or inventory
that was stored within the distribution center, recovery for that damage would not be barred by
the economic loss doctrine.  However, in this case, the retaining wall is the relevant product that
was bargained for by Plaintiff.  There is simply no "other property" at issue.

   Accordingly, the product for which Plaintiff bargained is the finished gabion retaining
walls.  All named Defendants contributed to its construction.  Because Plaintiff has not alleged
damages other than those related to the cost of repairing or replacing the walls, recovery is barred
under the economic loss doctrine.

## V.      CONCLUSION

   For the foregoing reasons, Defendant Debes' Motion to Dismiss will be granted.  Plaintiff
has filed a Motion for Leave to File a Second Amended Complaint and has attached a proposed
copy of that Complaint.  (Doc. No. 150.)  Under Rule 15(a) of the Federal Rules of Civil
Procedure, leave to amend should be given freely when justice so requires.  Fed. R. Civ. P. Rule
15(a).  This rule is liberally construed in favor of allowing disputes to be settled on their merits.
<u>See</u> <u>United States v. Houghman</u>, 364 U.S. 310, 316 (1960) (citing <u>Conley v. Gibson</u>, 355 U.S.
41, 48 (1957)); <u>Kauffman v. Moss</u>, 420 F. 2d 1270, 1276 (3d Cir. 1970).  As such, Plaintiff will
be permitted to file an Amended Complaint in conformity with the four Opinions issued by the
Court on this date.  An appropriate Order follows.