IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN STORES PROPERTIES, INC., | : | CIVIL ACTION |
| | : | |
| | : | NO. 05-1461 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SPOTTS, STEVENS & MCCOY, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

Slomsky, J.                                                    August 13, 2009

## I.    INTRODUCTION

The above-captioned matter is a complex construction case stemming from the alleged

failure to properly construct three retaining walls at Plaintiff American Stores Properties, Inc.'s

("ASPI") food distribution center located in Denver, Pennsylvania.  Plaintiff commenced this

action on March 29, 2005 and filed its Amended Complaint (Doc. No. 2) on July 22, 2005,

naming as defendants twelve parties alleged to have been involved in various aspects of the

construction of the retaining walls.  This action was transferred to the docket of this Court on

April 30, 2009.  The named defendants are: (1) Spotts, Stevens, & McCoy, Inc. ("SSM"); (2)

Clark/Epstein;[1] (3) The Clark Construction Group, Inc.; (4) A. Epstein & Sons, International,

---

[1]  Defendant Clark/Epstein is a joint venture formed by Defendant The Clark
Construction Group and Defendant A. Epstein & Sons, International, Inc. for purposes of
constructing the distribution center.  (Pl. Am. Comp. ¶ 30.)

Inc.; (5) Earth Engineering, Inc. ("EEI"); (6) Handwerk Contractors ("Handwerk");[2] (7) MacCaferri Gabions, Inc. ("MGI"); (8) Baseline Contracting, Inc. ("BCI"); (9) Haines & Kibbelhouse, Inc. ("Haines"); (10) High Associates, Ltd. ("High"); (11) CBL Service Corporation (f/k/a Lenders Support Group, Inc.) ("CBL"); and (12) Timothy E. Debes ("Debes").

Five Motions to Dismiss are currently before the Court.  In the Motions, Defendants seek dismissal of Counts which contain allegations of negligent or tortious conduct in regard to their participation in building the distribution center.  The Motions were filed by Haines, BCI, Handwerk, EEI and MGI ("Moving Defendants").  Defendant Haines filed its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) on August 12, 2005 (Doc. No. 3).  Plaintiff filed a Response in Opposition to Haines' Motion to Dismiss on August 29, 2005 (Doc. No. 27). Defendants BCI and Handwerk each filed Motions entitled: "Response to and Joinder in Defendant Haines & Kibbelhouse, Inc.'s Motion Pursuant to Rule 12(b)" on August 26, 2005 and August 31, 2005, respectively (Doc. Nos. 26 and 31).[3]  Plaintiff subsequently filed Responses in Opposition to BCI and Handwerks' Motions to Dismiss on September 7, 2005 and September 9, 2005, respectively (Doc. Nos. 32 and 35).[4]

Defendant EEI filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 13, 2005 (Doc. No. 36).  Plaintiff filed a Response in Opposition to EEI's

---

[2]  Handwerk is a Division of Blooming Glen Contractors, Inc. (Pl. Am. Comp. ¶ 7.)

[3]  Because BCI and Handwerk adopted Haines' entire motion and supporting memorandum, their "Response to and Joinder" will be referred to as "Motions to Dismiss."

[4]  Plaintiff's two Responses in Opposition to BCI and Handwerks' Motions to Dismiss incorporate by reference Plaintiff's previously filed Response in Opposition to Haines' Motion to Dismiss (see Doc. Nos. 27, 32 and 35).

Motion to Dismiss on October 13, 2005 (Doc. No. 69).  Defendant MGI filed a Motion to

Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 20, 2005 (Doc. No.

78).  Plaintiff filed a Response in Opposition to MGI's Motion to Dismiss on November 7, 2005

(Doc. No. 88).

     For the reasons that follow, Moving Defendants' Motions to Dismiss will be granted.[5]

## II.   FACTUAL BACKGROUND

     This litigation stems from the construction of a food and warehouse distribution center

("the Distribution Center" or "Building No. 264")[6] owned by Plaintiff ASPI, located in Denver,

Pennsylvania.  (Pl. Am. Comp. ¶ 15.)  Due to the uneven geological foundation of the land on

which the Distribution Center was to be constructed, gabion retaining walls were required as part

of the foundation for the building.  (Id. ¶ 22.)  A gabion retaining wall is composed of gabions, or

stone-filled wire baskets, which are stacked together to create an earth retaining wall.  (Id. ¶ 28.)

Plaintiff alleges that each of the named Defendants had roles in the design and/or construction of

the site's gabion retaining walls.

     Five gabion retaining walls were designed and constructed at the Distribution Center.  (Pl.

Am. Comp. ¶ 41.)  The walls were identified on the construction plans as Wall Nos. 1, 2, 3, 4 and

---

    [5]  The Moving Defendants have put forth a number of alternative arguments in support of
their Motions to Dismiss, such as the "gist of the action" doctrine and Plaintiff's failure to
comply with the alternative dispute resolution provisions contained in the Clark/Epstein
Agreement.  (See Doc. Nos. 3, 26, 31, 36 and 78.)  Applying the reasoning of the Court's ruling
filed on this date resolving the Motion to Dismiss of Defendant CBL/LSG, the Court concludes
that the "gist of the action" doctrine would also apply here and is another basis for granting
Moving Defendants' Motions to Dismiss.

    [6]  The Distribution Center was also called "Building No. 264" during the early stages of
development.  (Pl. Am. Comp. ¶ 29.)

5.  (Id.)  Plaintiff alleges that Wall No. 1 shows signs of distress from excessive movement and will eventually fail in its entirety if it is not repaired or replaced.  (Id.)  Wall No. 2 also shows signs of distress.  A 40-foot section of Wall No. 2 has already failed.  (Id.)  Portions of Wall No. 4 show signs of distress as well.  (Id.)  Plaintiff contends that the failure of Wall No. 2 and the evident distress in the other walls have progressed to the point where they will only become worse unless repaired or replaced.  (Id.)  The walls were designed to have a "useful life" in excess of 25 years and the distress and signs of movement within the walls are not normal and were not expected.  (Id. ¶ ¶ 42, 43.)

The genesis of this conflict began in 1996, when Plaintiff entered into an "Entitlement Services Agreement" with Defendant High ("High Agreement") to engage in the commercial development of the Distribution Center.  (Id. ¶ 17.)  Under this Agreement, Defendant High had the responsibility to manage the civil design and procurement of entitlements (i.e. obtaining the necessary permits) on behalf of ASPI.  (Id. ¶ 17.)  The High Agreement authorized High to engage subcontractors for the preparation of engineering investigations, reports, plans and specifications for the Distribution Center site work.  (Id.)  On or about September 10, 1998, Plaintiff ASPI entered into an "Abbreviated Standard Form of Agreement Between Owner and Architect" with SSM ("SSM Agreement"), under which SSM agreed to provide civil engineering plans and specifications for all site improvements at the Distribution Center, as well as construction, observation, and inspection of the site retaining walls.  (Id. ¶ 26.)  The SSM Agreement, in part, gave rise to the allegations against Defendant MGI, which are discussed below.

On or about June 29, 1998, after the design of the Distribution Center was complete,

4

Plaintiff ASPI entered into an agreement with Clark/Epstein entitled: "Agreement Between Owner and Contractor for the Building 264 Project - Cost of the Work Plus a Fee With a Guaranteed Maximum Price." ("Clark/Epstein Agreement")  (Id. ¶ 29; Pl. Ex. D.)  Pursuant to the Clark/Epstein Agreement, Clark/Epstein agreed to construct the Distribution Center and its associated site work in accordance with the construction plans and specifications previously prepared under the High and SSM Agreements.  (Id. ¶ 29.)  Clark/Epstein also agreed to provide all labor and materials for the construction of the gabion retaining walls.  (Id.)  The Clark/Epstein Agreement gave rise to the allegations against Defendants EEI, Handwerk, BCI and Haines, which are discussed below.

Due to the complex nature of this action, the Court will describe the allegations against Moving Defendants individually.

A.      Defendant MGI: Negligent Design and Inspection.

ASPI alleges one count of Negligent Design and Inspection against Defendant MGI (Count X).  (Pl. Am. Comp. ¶¶ 96-99.)  MGI is alleged to be in the business of designing and manufacturing gabion retaining wall systems and component materials.[7]  (Id. ¶ 38.)  SSM allegedly designed the site retaining walls using software provided by MGI, which included methodologies and minimum factors of safety.[8]  (Id. ¶¶ 28, 38.)  MGI is also alleged to have reviewed SSM's retaining wall plans and subsequently approved those plans in a letter dated

_____

[7] Defendant MGI claims that it is engaged only in the business of selling gabions, has never designed retaining walls, and is not licensed to do so.  (Doc. No. 78, ¶ 4.)

[8] MGI claims that, as with any seller of goods, it provides information about its products to design professionals and other interested persons upon request, but as noted above, it is not in the business of designing retaining walls.  (Doc. No. 78, ¶ 4.)

February 13, 1998.  (Id.; Pl. Ex. F.)  In addition, MGI sold gabions that were used in the

construction of the site retaining walls to subcontractor BCI.[9]  (Pl. Am. Comp. ¶ 38.)

Plaintiff alleges that MGI owed a duty to provide advice or recommendations for the

design and/or installation of the gabion retaining walls in accordance with the construction plans,

specifications and industry standards.  (Pl. Am. Comp. ¶ 97.)  ASPI claims that MGI breached

that duty when it approved SSM's design which was allegedly made in accordance with MGI's

design specification computer software.  (Id.)  Plaintiff alleges that the software used improper

design criteria for the backfill and retained soils, and that the walls were not designed in

accordance with the known safety factors in the industry to prevent excessive movement.  (Id.)

Plaintiff contends that MGI was negligent in its observation and inspection of the retaining walls

during construction.  (Id. ¶ 98.)  ASPI alleges damages in excess of $3,000,000 as a result of

MGI's negligence and breach of its duty.  (Id. ¶ 99.)

B.      Defendant EEI: Negligent Inspection and Testing.

ASPI alleges one count of Negligent Inspection and Testing against Defendant EEI

(Count IX).  (Pl. Am. Comp. ¶¶ 93-95.)  EEI entered into a subcontract agreement with

Clark/Epstein to provide consulting services, which included the testing and inspection of

materials related to the earthwork at the Distribution Center.  (Id. ¶ 36.)  During the construction

of the Distribution Center and its site work, EEI tested materials and performed inspections.  (Id.)

---

[9]  MGI concedes that it manufactured and sold, through its regional distributor, the
gabions used at the Distribution Center.  (Doc. No. 78, ¶ 4.)  However, MGI emphasizes that
there was no contract or agreement with either ASPI or SSM in regard to the design of the site
retaining walls.  (Id. ¶ 7.)  MGI contends that the only connection it had with the construction of
the Distribution Center was its sales contract with BCI for the gabions used at the site.  (Id. at
12.)

EEI was expressly bound to perform its work in accordance with the Clark/Epstein Agreement. (Id. ¶ 35.)

Plaintiff alleges that EEI owed a duty to Plaintiff to "provide competent geotechnical testing and inspections" during the construction of the retaining walls.  (Id. ¶ 94.)  ASPI claims that the failure of Wall No. 2 and the distress in Walls Nos. 1 and 4 were caused by EEI's failure to detect and report that construction of the walls did not conform to construction plans, specifications or industry standards.  (Id. ¶ 46.)  Plaintiff alleges that EEI's negligence and breach of its duty caused damages in excess of $3,000,000.  (Id. ¶ 95.)

C.      Defendant Handwerk: Negligent Construction.

ASPI alleges one count of Negligent Construction against Defendant Handwerk (Count VIII).  (Pl. Am. Comp. ¶¶ 88-92.)  Handwerk entered into a subcontract agreement with Clark/Epstein on or about June 22, 1998.  (Id. ¶ 37; Pl. Ex. E.)  According to that agreement, Handwerk was required to provide all labor, material and equipment required to furnish, deliver and install the gabion retaining walls in accordance with the Construction Specifications dated February 18, 1998.  (Id.)  Handwerk was expressly bound to perform its work in accordance with the Clark/Epstein Agreement.  (Id. ¶ 35.)

Handwerk constructed the gabion retaining walls at the Distribution Center, which included "the supply and placement of fill, the compaction of fill into the wire baskets, the placement of the wire baskets, the placement of wire ties used to interlock the wire baskets, the placement into the backfill of wire reinforcing . . . and the placement, compaction, and grading of fill placed behind the gabion retaining walls."  (Id. ¶ 37.)  In addition, Handwerk contracted with Defendants Haines and BCI requiring them to perform certain work relating to the construction

7

and installation of the gabion retaining walls.  The details of that work is discussed below in

Sections D and E regarding Defendants Haines and BCI.

Plaintiff alleges that Handwerk, as a result of its own work or that of its subcontractors,

breached its duty to construct the retaining walls and supply materials in accordance with the

construction plans and specifications, in a "good and workmanlike manner and in accordance

with industry standards."  (Id. ¶¶ 89, 90.)  Plaintiff claims Handwerk's negligence and breach of

its duty caused damages in excess of $3,000,000.  (Id. ¶ 91.)

D.       Defendant Haines: Negligent Construction.

Plaintiff alleges one count of Negligent Construction against Defendant Haines (Count

VIII).  (Pl. Am. Comp. ¶¶ 88-92.)  Haines entered into a subcontract agreement with Handwerk

to perform earthwork and/or to supply materials for the construction of the gabion retaining

walls.  (Id. ¶ 39.)

Plaintiff alleges that Haines breached the duty it owed to Plaintiff in the construction

and/or supply of materials used in the construction of the gabion retaining walls.  (Id. ¶ 89.)

Plaintiff claims that the failure of Wall No. 2 and the distress in Walls Nos. 1 and 4 was caused

by Haines failure to excavate, place, grade and compact earthwork for the retaining walls, "in

accordance with the construction plans and specifications, in a good and workmanlike manner

and in conformance with industry standards."  (Id. ¶ 46.)  Plaintiff alleges that Haines'

negligence and breach of its duty caused damages in excess of $3,000,000.  (Id. ¶ 91.)

E.       Defendant BCI: Negligent Construction.

Plaintiff alleges one count of Negligent Construction against Defendant BCI (Count VIII).

(Pl. Am. Comp. ¶¶ 88-92.)  BCI entered into a subcontract agreement with Handwerk to build,

assemble and install the gabion retaining wall baskets for the Distribution Center.  (Id. ¶ 40.)

Plaintiff claims that the failure of Wall No. 2 and the distress in Walls Nos. 1 and 4 was caused by BCI's failure to assemble and install the retaining wall baskets "in conformance with the construction plans and specifications, in a good and workmanlike manner and in accordance with industry standards."  (Id. ¶ 47.)  Plaintiff again alleges that BCI's negligence and breach of its duty caused damages in excess of $3,000,000.  (Id. ¶¶ 90, 91.)

## III.   MOTION TO DISMISS STANDARD

Defendants have moved to dismiss several counts of Plaintiff's Complaint for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12 (b)(6). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted) (reasoning that this statement of Rule 12(b)(6) standard remains acceptable following U.S. Supreme Court's decision in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007)).

To withstand a motion to dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level." Phillips, 515 F.3d at 234.  When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (reaffirming rationale set forth in Twombly).  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements do not suffice."  Id.

## IV.  DISCUSSION

The Court presides over this case under diversity of citizenship jurisdiction.  In a diversity case, the Court must apply the substantive law of Pennsylvania.  Erie R.R. v. Tomkins, 304 U.S. 64, 78-79 (1938); Ford v. Exel, Inc., No. 08-cv-1735, 2008 U.S. Dist. LEXIS 103262, **3-4 (E.D. Pa. Dec. 17, 2008).

     A.    Plaintiff's Negligence Claims against Defendants EEI, Handwerk, Haines, BCI and MGI are Barred by the Economic Loss Doctrine.

In Counts VIII to X of the Amended Complaint, Plaintiff is seeking damages from Moving Defendants related to the cost of repairing and/or replacing the allegedly defective gabion retaining walls at its Distribution Center.  The Counts claim negligent or tortious conduct by Moving Defendants.  Because Plaintiff does not allege any physical injury to any person or damage to property apart from the retaining walls, its negligence claims against Moving Defendants are barred by the economic loss doctrine.

The economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Adams v. Copper Beach Townhome Cmtys., L.P., 816 A.2d 301, 305 (Pa. Super. Ct. 2003). Economic loss has been defined as "damage for inadequate value, costs of repair and replacement of defective product, consequential loss of property, *without any claim of personal injury or damage to other property*."  Palco Linings, Inc. v. Pavex, Inc., 755 F. Supp. 1269, 1276 (M.D. Pa. 1990) (emphasis added).  Because Counts VIII to X fail to allege a claim of damage for personal injury or damage to property apart from the retaining walls, the economic loss

doctrine bars Plaintiff's negligence claims against Moving Defendants.

Plaintiff puts forth three arguments in opposition to the application of the economic loss doctrine to its claims against Moving Defendants: (1) that the doctrine is inapplicable absent privity between the parties; (2) that the holding in Bilt-Rite Contractors, Inc. v. Architectural Studio, 866 A.2d 270 (Pa. 2005) prevents the Court from applying the economic loss doctrine; and (3) that Plaintiff did suffer damages to "other property."  The Court will discuss each argument made by Plaintiff *seriatim*, but is not persuaded that they overcome the legal bar raised by Moving Defendants.

        1.     *The Economic Loss Doctrine Bars Plaintiff's Negligence Claims Despite the Absence of Privity Between the Parties.*

Plaintiff argues that the economic loss doctrine is not applicable to its claims against Moving Defendants because no privity of contract exists between ASPI and Moving Defendants. (Doc. No. 69 at 8-9 and Doc. No. 88 at 9.)  However, controlling Federal and Pennsylvania state law hold that privity of contract is not required for application of the economic loss doctrine to Plaintiff's negligence claims.  See e.g., Hartford Fire Ins. Co. v. Associated Const. & Mgmt. Corp., No. 98-45, 2000 U.S. Dist. LEXIS 4959, at **25-26 (E.D. Pa. Apr. 19, 2000);  Spivack v. Berks Ridge Corp. Inc., 586 A.2d 402, 405 (Pa. Super. Ct. 1990).

In a series of cases that resulted from the construction of Two-Liberty Place in Philadelphia, courts in the Eastern District of Pennsylvania consistently found that, even where the parties were not in privity of contract, Pennsylvania law does not recognize a cause of action based on negligent acts that result in only economic loss.  Gittens-Atman, A.M.A. v. HCB Contractors, No. 90-6908, 1992 U.S. Dist. LEXIS 13431, at **3-4 (E.D. Pa. Sept. 08, 1992) (dry-

wall subcontractors negligence claim against project architect dismissed even in the absence of contractual privity); HCB Contractors v. Rouse Assoc., No. 91-5350, 1992 U.S. Dist. LEXIS 17442, at **14-15 (E.D. Pa. Oct. 26, 1992) (subcontractor owed no duty to alleged injured party asserting only economic loss, with whom it was not in privity).  Courts in the Eastern District of Pennsylvania have continued to recognize application of the economic loss doctrine to cases where no contractual relationship exists between the parties.  Waynesborough Country Club of Chester Cty. v. Diedrich Bolton Architects, Inc., No. 07-155, 2008 U.S. Dist. LEXIS 55698, at **20-21 (E.D. Pa. Mar. 10, 2008) (stating that Pennsylvania law does not recognize a cause of action between parties not in privity of contract for negligent acts that result in only economic injuries); Hartford Fire Ins. Co., 2000 U.S. Dist. LEXIS 4959, at **25-26 (plaintiff's negligence claim against defendant for its lack of proper engineering evaluation and judgment relating to roof construction dismissed despite lack of contractual relationship); Allied Fire & Safety Equip. Co. Inc. v. Dick Enterprises, Inc., 972 F. Supp. 922, 938 (E.D. Pa. 1997) (recognizing that the economic loss doctrine has been applied when the parties did not have a contractual relationship).

The Pennsylvania Superior Court has consistently applied the economic loss doctrine to prevent recovery for economic loss where the parties were not in privity of contract.  Aikens v. Baltimore & Ohio RR. Co., 501 A.2d 277, 278 (Pa. Super. Ct. 1985); see also Spivack, 586 A.2d at 405 (negligent construction and design claim against builder/general contractor barred by economic loss doctrine despite absence of contractual relationship); Margolis v. Jackson, 543 A.2d 1238, 1240 (Pa. Super. Ct. 1988) ("Purely economical loss, when not accompanied with or occasioned by injury, is considered beyond the scope of recovery even if a direct result of the

negligent act."); <u>Gen. Pub. Util. v. Glass Kitchens of Lancaster</u>, 542 A.2d 567, 570 (Pa. Super. Ct. 1988) (tourist industry could not recover against owners of nuclear power plant for economic loss arising from negligent nuclear accident that caused diminution in tourist industry).  While the Pennsylvania Superior Court has applied the economic loss doctrine in a variety of contexts, the rationale behind the application of this doctrine is appropriate in the instant matter because "to allow a [negligence cause of action for] purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action. Such an outstanding burden is clearly inappropriate and a danger to our economic system."  <u>See</u> <u>Aikens</u>, 501 A.2d at 279.

Plaintiff's argument that the economic loss doctrine is not applicable absent privity of contract is based entirely on a single sentence found in <u>Duquesne Light Co. v. Westinghouse</u> <u>Elec. Corp.</u>, stating that: "the economic loss doctrine ... only covers situations in which 'a party in privity of contract with another suffers an injury to a product itself resulting in purely economic loss.'"  66 F.3d 604, 620 (3d Cir. 1995) (quoting <u>Grode v. Mut. Fire, Marine & Inland</u> <u>Ins. Co.</u>, 623 A.2d 933, 934 (Pa. Commw. Ct. 1993)).  However, the sentence that Plaintiff relies upon is dicta.  In the <u>Duquesne Light Co.</u> case, a contract existed between the parties and the court did not decide whether privity of contract was required in order to apply the economic loss doctrine.  The court did not engage in any analysis based upon lack of privity between the parties. Therefore, <u>Duquesne Light Co.</u> is inapposite to the present case and does not provide support for Plaintiff's claim that the economic loss doctrine should not be applied here.

2.      *Plaintiff's Reliance on the <u>Bilt-Rite</u> case is Misplaced Because the
Holding in <u>Bilt-Rite</u> is Restricted to a Negligent-Misrepresentation Claim.*

Plaintiff also argues that the holding of <u>Bilt-Rite Contractors, Inc. v. Architectural Studio</u>,

866 A.2d 270 (Pa. 2005) prevents the Court from applying the economic loss doctrine when

"dealing with professionals whose information is to be relied upon by others in the industry."

(Doc. No. 69 at 10 and Doc. No. 88 at 11-12.)  However, the <u>Bilt-Rite</u> decision is not applicable

here because the Supreme Court of Pennsylvania addressed the economic loss doctrine only in

the narrow context of a negligent misrepresentation claim.

In <u>Bilt-Rite</u>, the East Penn School District hired The Architectural Studio ("TAS") to

provide services for the design and construction of a new school.  866 A.2d at 272.  TAS

provided its plans, drawings and specifications with full knowledge that those plans would then

be submitted to various contractors who subsequently bid on the project.  <u>Id.</u> at 288.  Bilt-Rite

Contractors ("Bilt-Rite") was awarded the general construction contract and entered into a

contract with the school district.  <u>Id.</u> at 272.  The contract specifically referred to and

incorporated by reference all of the plans prepared by TAS.  <u>Id.</u>  Shortly after construction

commenced, Bilt-Rite discovered that some of the representations contained in TAS'

specifications were inaccurate, resulting in significantly increased construction costs.  <u>Id.</u>  Bilt-

Rite sued TAS on a theory of negligent misrepresentation under Section 552 of the Restatement

(Second) of Torts (1977), and claimed that it had relied on the plans prepared by TAS in

formulating its winning bid on the project.  <u>Id.</u> at 272-273.  The Supreme Court formally adopted

Section 552 as the law in Pennsylvania, for which privity is not a requirement, and held that the

economic loss doctrine does not apply to claims for negligent misrepresentation against design

professionals whose information may be relied upon by others.  Id. at 285.

Bilt-Rite does not preclude the application of the economic loss doctrine to all negligent or tortious conduct alleged against parties involved in a construction project.  Its holding only applies to a claim for negligent misrepresentation under Section 522 of the Restatement (Second) of Torts (1977).  While Bilt-Rite does carve out an exception to the economic loss doctrine to allow a commercial plaintiff to seek recourse from an "expert supplier of information" with whom the plaintiff had no contractual relationship, most courts have specifically restricted the holding in Bilt-Rite to negligent misrepresentation claims under Section 552.  See e.g., Sovereign Bank v. BJ's Wholesale Club, 533 F.3d 162, 193 (3d Cir. 2008); Nufeeds, Inc. v. Westmin Corp., No. 04-1071, 2006 U.S. Dist. LEXIS 21030, at **26-31 (M.D. Pa. Apr. 17, 2006); Pa. State Employees Credit Union v. Fifth Third Bank, 398 F. Supp. 2d 317, 327 (M.D. Pa. 2005); Samuel Grossi & Sons, Inc. v. U.S. Fidelity & Guar. Co., No. 3590, 2005 Phila. Ct. Com. Pl. LEXIS 283, at *18 n.2 (Pa. Ct. Com. Pl. June 27, 2005).  Some courts have read Bilt-Rite to have a more narrow application: to only negligent misrepresentation claims involving architects and similar design professionals.  See e.g., Rock v. Voshell, No. 05-1468, 2005 U.S. Dist. LEXIS 36942, at **4-7 (E.D. Pa. Dec. 29, 2005); Carson/DePaul/Ramos v. Driscoll/Hunt, No. 02166, 2006 Phila. Ct. Com. Pl. LEXIS 278, at *32 n.31 (Pa. Ct. Com. Pl. June 29, 2006).

While the holding in Bilt-Rite is controlling on claims for negligent misrepresentation that fall under Section 522 of the Restatement (Second) of Torts, Plaintiff has not brought a negligent misrepresentation claim against any of the Moving Defendants.  Therefore, the Court finds that Bilt-Rite does not prevent application of the economic loss doctrine to Plaintiff's negligence claims in this case.

3.      *Plaintiff Did Not Suffer Damage to "Other Property."*

Plaintiff argues that the economic loss doctrine should not bar its claims against Defendants EEI and MGI, because the damage incurred as a result of the failure of the retaining walls was not damage to the "product itself," but was damage to "other property."  (Doc. No. 69 at 9-10 and Doc. No. 88 at 10-11.)  Despite Plaintiff's argument, the finished gabion retaining walls were the "product" for which ASPI bargained.  Accordingly, damages related to the cost of repair or replacement of those walls based upon the negligence claims in the Amended Complaint are not recoverable under the economic loss doctrine.

In Hartford Fire Ins. Co.v. Associated Const. & Mgmt. Corp., the court applied the economic loss doctrine to a case factually similar to the instant one.  2000 U.S. Dist. LEXIS 4959 (E.D. Pa. Apr. 19, 2000).  In Hartford Fire Ins. Co., the plaintiff insurer sued a number of defendants following the partial collapse of its insured's manufacturing facility's roof.  Id. at *3. The court applied the economic loss doctrine to dismiss the negligence claims against a defendant who had supplied purlins for the reconstructed roof, as well as engineering services, and held that the "product" that the Plaintiff had purchased was not the component purlins, but was the actual repair and reconstruction of the roof.  Id. at **14-22.  The Hartford Fire Ins. Co. court relied on the Third Circuit's analysis in Commercial Union Ins. Co.v. Kirby Bldg. Sys., Inc., where the court examined four post-East River cases (including those cited by Plaintiff in the instant matter) to determine what constitutes damage to "other property."  2000 U.S. Dist. LEXIS 4959, at **17-22 (citing Commercial Union Ins. Co., 149 F.3d 1163 (3d Cir. 1998)).  The Hartford Fire Ins. Co. court adopted the reasoning of the court in Commerical Union and stated: "where a plaintiff sues a component manufacturer, rather than the manufacturer of a final

assembled product, King holds that a court must not look to the component part to define the product; rather, the relevant 'product' remains 'what the plaintiff bargained for.'" 2000 U.S. Dist. LEXIS 4959, at **17-22 (citing Commercial Union Ins. Co., 149 F.3d 1163); King v. Hilton-Davis, 855 F.2d 1047, 1051-1052 (3d Cir. 1988)).  In the instant case, under the Commercial Union/King analysis, the "product" is the finished gabion retaining walls for which ASPI bargained.  Accordingly, Plaintiff has only alleged damage to "the product itself," which is not recoverable under the economic loss doctrine.

Plaintiff relies on 2-J Corp. v. Tice, 126 F.3d 539, 543 (3d Cir. 1997) in support of its position that the damage to the retaining walls is damage to "other property" which is recoverable despite the economic loss doctrine.  (Doc. No. 69 at 9-10 and Doc. No. 88 at 10-11.) In 2-J Corp. v. Tice, the court noted that "for purposes of applying the economic loss doctrine, 'the product' is no more and no less than whatever the manufacturer placed in the stream of commerce by selling it to the initial user."  126 F.3d 539, 543 (3d Cir. 1997) (quoting Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875 (1997)).  Plaintiff contends that under this description of "product," the Soils Report prepared by EEI is the "product" which was placed in the stream of commerce, and that MGI's "product" was its advice, recommendations and software that were used by others in the design of the retaining walls.  (Doc. No. 69 at 9-10 and Doc. No. 88 at 10-11.)  However, Plaintiff is mistaken in relying on 2-J Corp. because the factual circumstances presented here are clearly distinguishable from those in 2-J Corp.

In 2-J Corp., the plaintiff was permitted to recover damages for inventory and other goods from the manufacturer of its pre-engineered warehouse.  126 F.3d at 540.  The inventory was stored in the warehouse and was damaged when the warehouse collapsed.  Id.  The court

determined that the warehouse itself was the "product" and that recovery was appropriate for the inventory and other goods stored within the warehouse, since they constituted damage to "other property." Id. at 544. In the instant matter, if ASPI had alleged damage to goods or inventory that was stored within the distribution center, recovery for that damage would not be barred by the economic loss doctrine. However, in this case, the retaining wall is the relevant product that was bargained for by Plaintiff. There is simply no "other property" at issue.

Accordingly, the product for which Plaintiff bargained is the finished gabion retaining walls. All Moving Defendants contributed to its construction. Because Plaintiff has not alleged damages other than those related to the cost of repairing or replacing the walls, recovery is barred under the economic loss doctrine.

## V.    CONCLUSION

For the foregoing reasons, Moving Defendants' Motions to Dismiss will be granted. Plaintiff has filed a Motion for Leave to File a Second Amended Complaint and has attached a proposed copy of that Complaint. (Doc. No. 150.) Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend should be given freely when justice so requires. Fed. R. Civ. P. Rule 15(a). This rule is liberally construed in favor of allowing disputes to be settled on their merits. See United States v. Houghman, 364 U.S. 310, 316 (1960) (citing Conley v. Gibson, 355 U.S. 41, 48 (1957)); Kauffman v. Moss, 420 F. 2d 1270, 1276 (3d Cir. 1970). As such, Plaintiff will be permitted to file an Amended Complaint in conformity with the four Opinions issued by the Court on this date. An appropriate Order follows.